**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

**DAVID ANDERSON**                                                                                   **PLAINTIFF**
**ADC #87368**

**V.**                      **CASE NO.: 5:10CV00056 JMM/BD**

**W. STRAUGHN, et al.**                                                          **DEFENDANTS**

**RECOMMENDED DISPOSITION**

**I.**      **Procedures for Filing Objections:**

The following Recommended Disposition has been sent to United States District Judge James M. Moody. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this recommendation. A copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

Mail your objections and/or request for a hearing to:

      Clerk, United States District Court
      Eastern District of Arkansas
      600 West Capitol Avenue, Suite A149
      Little Rock, AR 72201-3325

## II.     Introduction:

On March 2, 2010, Plaintiff, an inmate at the Arkansas Department of Correction ("ADC"), filed his original Complaint in this action under 42 U.S.C. § 1983 (docket entry #2). On March 10, 2010, Plaintiff filed an Amended Complaint (#6). He now has filed a motion for preliminary injunction (#19).

In his original Complaint, Plaintiff claims that Defendants acted with deliberate indifference to his serious medical needs. Specifically, Plaintiff complains that, during his incarceration at the Cummins Unit, he was given an improper medical classification and was required to work beyond his physical ability. Further, Plaintiff claims that he has not been evaluated by an orthopedic surgeon although he has a screw protruding from his left knee, and that his left ankle has not been x-rayed as ordered.

Plaintiff also claims that since 2008, he has continually experienced chest pains and shortness of breath. He alleges that Defendants have failed to treat these symptoms and that his blood pressure has gone unmonitored at times. Finally, Plaintiff complains that Correctional Medical Services has repeatedly let his medications run out, causing him to go without certain medications for days at a time. Plaintiff requests money damages as well as injunctive relief and names as Defendants: Warden Straughn, Correctional Medical Services, Wendy Kelley, Judy Savoy, M. Austin, and Estella Murray. In his Amended Complaint, Plaintiff complains that his medical records have been lost and that his chronic care medications have not been refilled.

The Court recommends that Plaintiff's Complaints be dismissed in their entireties and that Plaintiff's motion for preliminary injunction (#19) be DENIED as moot.[1]

## III.   Discussion:

To state a cognizable claim under 42 U.S.C. § 1983, a plaintiff must allege that the conduct of a defendant acting under color of state law deprived him of a right, privilege, or immunity secured by the United States Constitution or by laws of the United States. 42 U.S.C. § 1983. Although "detailed factual allegations are not required," the complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1940 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, --- U.S. ----, 129 S.Ct. at 1940.

While a court must accept factual allegations in a complaint as true and hold a plaintiff's pro se complaint "to less stringent standards than formal pleadings drafted by

---

[1] The Court notes that when deciding whether to grant a prisoner preliminary injunctive relief, courts must consider: (1) the threat of irreparable harm to the movant; (2) the balance between the harm to the movant and the harm to the nonmoving party should the injunction issue; (3) the likelihood of success on the merits; and (4) the public interest. *Randolph v. Rodgers*, 170 F.3d 850, 857 (8th Cir. 1999) (citing *Dataphase Sys. v. C.L. Sys.*, 640 F.2d 109, 113 (8th Cir. 1981)). In Plaintiff's motion, he complains about ADC officials' failure to allow inmates to wear "medical product shoes to classification and visitation"and their denial of "double mattress scripts." Plaintiff fails to state that he will suffer any irreparable harm if an immediate injunction is not issued. Any harm alleged is speculative at best. Accordingly, Plaintiff is not entitled to the injunctive relief he seeks.

lawyers," *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam ), a plaintiff still must assert facts sufficient to state a claim as a matter of law. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

    A.    Defendant Straughn

Plaintiff complains that on July 31, 2007, he was escorted to Defendant Warden Straughn's office to discuss an informal resolution that he had filed against an officer at the Cummins Unit of the ADC.  Plaintiff alleges that when he arrived, Defendant Straughn told him that he was lazy and called him names.  Plaintiff claims that Defendant Straughn yelled at him for writing internal affairs, then issued an order for Plaintiff to submit to a physical examination.  These allegations, assuming they are true, fail to state a constitutional clam against Defendant Straughn.

It is well-settled that cursing, verbal abuse, and threatening language do not amount to a constitutional violation.  See *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993); *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992).  Further, to the extent that Plaintiff alleges that Defendant Straughn retaliated against him for using the grievance process, this claim also fails.  To state a valid claim for retaliation, a prisoner must allege that: (1) he engaged in some protected activity; and (2) defendants took adverse action against him, in retaliation, "that would chill a person of ordinary firmness from engaging in that activity." *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007); *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004); see also *Sisneros v. Nix*, 95 F.3d

749, 752 (8th Cir. 1996) (inmate claiming retaliation is required to meet substantial burden of proving actual motivating factor for adverse action). Mere speculative or conclusory allegations are insufficient to establish a retaliation claim. *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam).

Here, the alleged adverse action is that Defendant Straught yelled at Plaintiff and ordered him to submit to a physical examination. The Court concludes that such conduct does not constitute the kind of "adverse action" that would "chill a person of ordinary firmness from engaging" in protected activity. In fact, according to Plaintiff's own allegations, Defendant Straughn's conduct did not hinder him from immediately filing a grievance against Defendant Straughn, which he fully exhausted. (#2 at p.9) Thus, Plaintiff's claims against Defendant Straughn fail, as a matter of law.

    B.    Correctional Medical Services ("CMS")

Plaintiff alleges that Defendant CMS has continually let his pain and chronic care medication run out, causing him to go days without medication. Even if the allegations are true, CMS can be held liable only if, "there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). See also *Clay v. Morgan*, 79 Fed. Appx. 940, 941 (8th Cir. 2003) (unpub. per curiam) (citing *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-976 (8th Cir. 1993)) (holding that corporations such as CMS can be held liable only if they act under color of

state law, and if their policies, customs, or the actions of their policymakers cause injury that can be redressed under section 1983).

The Eighth Circuit Court of Appeals has defined the term "policy" as "an official policy, a deliberate choice of a guiding principle or procedure made by an official with authority." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). "Custom" means a "persistent, widespread pattern of unconstitutional conduct of which officials have notice and subsequently react with deliberate indifference or tacit authorization." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 536 (8th Cir. 1999).

Here, Plaintiff has failed to identify any such policy, custom, or official action on the part of CMS. Although Plaintiff claims that CMS has repeatedly allowed him to go without medication, he has not alleged a "widespread pattern of unconstitutional conduct," nor has he alleged that officials were notified of any such conduct and failed to act. To the contrary, Plaintiff alleges in his Amended Complaint, that when he brought this problem to Defendant Austin's attention, she immediately provided him with medication.[2] Moreover, Plaintiff failed to allege that he sustained any injury as a result of CMS's alleged conduct. Accordingly, CMS should be dismissed as a party Defendant.

---

[2] In his Complaint, Plaintiff states that he has "never dealt with such negligence." (#2 at p.20) Unfortunately for Plaintiff, to prove deliberate indifference, a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

C.   Wendy Kelley

Plaintiff alleges that on February 9, 2010, Defendant Kelley ordered that Plaintiff's knee be x-rayed. Plaintiff claims that, to date, his knee has not been x-rayed and that Defendant Kelley has refused to order that Plaintiff's left ankle be x-rayed. Plaintiff also claims that Defendant Kelley refused to consider his medical history when denying appeals of his grievances concerning his medical reclassification. Plaintiff's claims against Wendy Kelley also fail.

"To hold supervisors liable under section 1983, a plaintiff must show that a superior had actual knowledge that his [or her] subordinates caused deprivations of constitutional rights and that he [or she] demonstrated deliberate indifference or 'tacit authorization' of the offensive acts by failing to take steps to remedy them." *Pool v. Missouri Dep't. of Corrections & Human Resources*, 883 F.2d 640, 645 (8th Cir. 1989). Here, Plaintiff's Complaint is void of any such facts.

Although Defendant Kelley was involved in Plaintiff's grievance process, her involvement is insufficient, as a matter of law, to impose liability on her. In a recent unpublished opinion, the Court of Appeals for the Eighth Circuit held that a prison official's denial of grievances was insufficient to support liability under § 1983. See *Rowe v. Norris*, 198 Fed. Appx. 579, *1 (8th Cir. 2006) (unpublished) (per curiam). In addition, in *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997), the Court explained that claims of medical indifference should be filed against those individuals directly

responsible for the inmate's medical care. Here, Plaintiff has not alleged that Defendant Kelley is in such a position. In addition, based upon Defendant Kelley's responses to Plaintiff's grievances attached to the Complaint, it appears that she fully evaluated his medical records before responding to his complaints. Thus, Plaintiff can hardly claim that Ms. Kelley ignored his records or acted with deliberate indifference to his medical needs.

Further, based upon Plaintiff's allegations, it appears that Defendant Kelley is attempting to help Plaintiff by ordering that his left knee be x-rayed. Although Plaintiff complains that Defendant Kelley refused to order an x-ray of his left ankle, this allegation, standing alone, does not state a claim for deliberate indifference to a serious medical need. Rather, it appears that Plaintiff simply disagrees with the treatment decisions made regarding his left ankle. It is understandable that Plaintiff has opinions about the proper course of his treatment, but settled law is clear. Disagreement with treatment decisions does not rise to the level of a constitutional violation. *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008) (quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)). Plaintiff has no constitutional right to receive a particular or requested course of treatment. *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). Accordingly, Plaintiff's claims against Defendant Kelley fail.

D.     Defendants Murray and Austin

In his Complaint, Plaintiff alleges that in November 2009, Defendant Murray ordered that Plaintiff submit to a physical examination, then improperly changed his

medical classification from M-3 to M- 2.  Plaintiff disagrees with Defendant Murray's assessment and contends that he cannot perform the work required at his new classification.  In addition, Plaintiff claims that Defendant Austin, as CMS infirmary administrator, is liable for allowing Defendant Murray to rescind Plaintiff's M-3 classification.  Plaintiff also complains that these Defendants have refused to allow him to be examined by an orthopedic surgeon to have his left ankle evaluated and that they have failed to adequately treat his complaints regarding his chest pains and shortness of breath.  Plaintiff's claims against these Defendants fail.

"Prison officials are deliberately indifferent in the work-assignment context if they knowingly compel an inmate to perform physical labor that is dangerous to his health, is unduly painful, or requires strength beyond his capacity." *Pitts v. Carrol*, 208 F.3d 218 (unpub. per curiam) (8th Cir. 2000) (citing *Choate v. Lockhart*, 7 F.3d 1370, 1374 (8th Cir. 1993)).

Here, Plaintiff claims that he has a screw protruding through the skin of his left knee, ten screws in his left ankle, and two steel plates in his foot.  Plaintiff claims that he made Defendants aware of his medical condition, but that they ignored his complaints and rescinded his M-3 medical status.  Plaintiff has failed, however, to allege that any Defendant has compelled him to perform any labor that is actually beyond his strength, dangerous to his life, or "unduly painful."  See *Williams v. Norris*, 148 F.3d 983, 987 (8th Cir. 1998).  Rather, Plaintiff complains that his classification, "immediately places

Plaintiff in work situations that he's not qualified for," and "will only cause more pain and suffering." (#2 at p.12) Plaintiff makes clear that he has not been placed in any such situation when he states that "it's just a matter of time when [D]efendants will order Plaintiff to comply with [Defendant] Murray's assessment." (#2 at p.14) Such speculation cannot support Plaintiff's claim. Because Plaintiff has failed to allege that he has suffered any real injury as a result of his reclassification or that he has actually been compelled to perform labor beyond his strength, his claims against Defendants Murray and Austin fail.[3]

Further, Plaintiff's complaints that Defendants Murray and Austin have refused to allow him to be seen by an orthopedic surgeon and have not adequately treated or monitored his chest pains also fail to state a constitutional claim. First, it again appears that Plaintiff simply disagrees with the treatment that he has been provided for both his left ankle and his chest pains.[4] Disagreement with treatment decisions does not rise to the level of a constitutional violation. See *Popoallii*, *supra*. Further, with regard to

---

[3] In his Complaint, Plaintiff complains that he was disciplined for failing to perform work that he could not perform on two occasions. Plaintiff, however, does not reference any of the named Defendants when describing those incidents. Further, based upon Plaintiff's allegations, those incidents occurred in July 2007. Plaintiff's medical classification was not changed until November 2009. Moreover, it does not appear from Plaintiff's Complaint that any the officers involved in the incidents were aware of Plaintiff's medical conditions and knew that the work required was beyond Plaintiff's ability.

[4] Plaintiff clarifies his position in his Complaint by stating that although he has been examined by Dr. Moskovich who "does not see an issue with the screws, Plaintiff beggs [sic] to differ." (#2 at p.16)

Plaintiff's complaints of chest pains, based upon Plaintiff's allegations, it appears that Defendants previously ordered both a chest x-ray and an EKG for Plaintiff. (#2 at p.18) Although such tests may not have provided Plaintiff the answers that he desired, he cannot credibly claim that these Defendants have deliberately disregarded his medical needs.[5]

In addition, Plaintiff fails to allege that he has sustained any actual injury as a result of any alleged delay in treatment.[6] See *Sherrer v. Stephens*, 50 F.3d 496, 497 (8th Cir. 1994) (delay in treatment claims require evidence that defendants ignored an acute or

---

[5] To the extent that Plaintiff claims that Defendant Kelley acted with deliberate indifference to his medical needs for failing to properly monitor his chest pains and shortness of breath, this claim also fails. Again, Defendants have ordered both a chest x-ray and an EKG for Plaintiff. Although Plaintiff may not be happy with the result, he cannot claim that these Defendants have deliberately disregarded his medical needs. Further, Plaintiff has failed to allege that he has sustained any actual injury as a result of any delay in treatment.

[6] Although Plaintiff generally complains of additional pain throughout his Complaint, he does not specifically claim that he has sustained any actual injury as a result of any delay in medical treatment. The only possible injury Plaintiff claims to have sustained resulted from an incident that occurred on August 24, 2008. On that date, he was taken to the infirmary due to complaints of chest pain and shortness of breath. Dr. Blackmon advised that Plaintiff should take medication to lower his blood pressure. After Plaintiff took the medication, he was sent back to his barracks. Plaintiff claims that Nurse Pennington later told Plaintiff he had suffered some damage from the attack on August 24, 2008. Plaintiff does not allege that any individual engaged in any improper conduct during the August 24, 2008 incident, nor does he state that any individual is responsible for any alleged injury. Accordingly, Plaintiff has failed to state a claim.

escalating situation or that the delays adversely affected the prognosis). Accordingly, Plaintiff's claims against these Defendants fail.[7]

E.     Defendant Savoy

In his Complaint, Plaintiff alleges that Defendant Savoy, the director of nurses at the Cummins Unit, conspired with Defendant Murray to rescind Plaintiff's M-3 classification. Plaintiff alleges that in November 2009, after Plaintiff was called to Defendant Murray's office to submit to a physical examination, Defendant Murray had a conversation with Defendant Savoy about Plaintiff's medical classification. Plaintiff states that this conversation took place in Defendant Savoy's office, but that he was not a party to this conversation and could not hear the conversation. Plaintiff simply alleges that Defendant Savoy and Defendant Murray were "working together on how to proceed." (#2 at p.10) Plaintiff has failed to state a constitutional claim against Defendant Savoy.

It is well settled that a conspiracy claim must be pled with sufficient specificity and factual support to suggest a "mutual understanding" between the defendants or a "meeting of the minds." *Cooper v. Delo*, 997 F.2d 376, 377 (8th Cir. 1993) (dismissing a prisoner's conclusory conspiracy claim because he failed to plead specific facts suggesting a mutual understanding or meeting of the minds); *Manis v. Sterling*, 862 F.2d

---

[7] Plaintiff also alleges that Defendant Murray would not prescribe Plaintiff an additional pillow to place between his legs at night. Again, Plaintiff has failed to allege that he has sustained any injury as a result of such conduct and simply appears to disagree with Defendant Murray's treatment decisions.

679, 681 (8th Cir. 1988) (same); *Smith v. Bacon*, 699 F.2d 434, 436 (8th Cir. 1983) (same). Here, Plaintiff failed to allege any such facts in his Complaint. Accordingly, his claim against Defendant Savoy must be dismissed.

    F.    Amended Complaint

In his Amended Complaint, Plaintiff alleges that on March 3, 2010 (after Plaintiff filed his original Complaint in this case), Ms. Compton and Ms. Esaw advised Plaintiff that they did not know where Plaintiff's medical records were currently located and that they were attempting to find them. Plaintiff states that Ms. Hubbard, Ms. Yarbrough, and Ms. Gordon previously were in possession of Plaintiff's medical records. Plaintiff's claim should be dismissed.

Plaintiff fails to allege any intentional conduct on the part of any of these individuals. Ms. Compton and Ms. Esaw advised Plaintiff that they were attempting to locate his medical files. Moreover, these events are completely unrelated to the claims raised in Plaintiff's original Complaint. Although Plaintiff's medical files could be used as evidence to support his claims in his original Complaint, these allegations are not related to Plaintiff's original claims. Accordingly, this claim should be dismissed.

In his Amended Complaint, Plaintiff also complains that on March 4, 2010 (after Plaintiff's original complaint was filed), he discovered that his chronic care medications were not being properly refilled. Plaintiff states that he complained to Sgt. Brogan about this problem and that Sgt. Brogan escorted Plaintiff to the infirmary. When Plaintiff

arrived at the infirmary, Defendant Austin explained to Plaintiff that she was not sure why his prescriptions had not been re-filled but provided Plaintiff with enough medication to last him through the weekend. Again, Plaintiff has failed to state a constitutional claim.

Plaintiff has failed to allege that either of these individuals were responsible for failing to re-fill his prescriptions. Further, Plaintiff does not allege that he sustained any injury as a result of any delay in treatment.

Because Plaintiff has failed to allege any intentional unconstitutional conduct on the part of any individual named in his Amended Complaint, Plaintiff's claims should be dismissed.

IV. **Conclusion:**

The Court recommends that Plaintiff's claims raised in both his original and amended Complaints be dismissed without prejudice.

DATED this 24th day of March, 2010.

_____
UNITED STATES MAGISTRATE JUDGE